NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.J., J.J., and J.J.

No. 1 CA-JV 22-0192
FILED 2-14-2023

---

Appeal from the Superior Court in Yavapai County
No.  V1300SV202180012
The Honorable Anna C. Young, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Florence M. Bruemmer, PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Ayla J., Cottonwood
*Appellee*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Peter B. Swann[1] joined.

---

[1] Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court.  He retired effective November 28,

**P A T O N**, Judge:

¶1	Seth J. appeals the superior court's order terminating his parental rights over his three daughters, J.J., J.J., and J.J. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2	Seth J. ("Father") and Ayla J. ("Mother") (collectively "Parents") married in 2015 and have three children together. The couple frequently argued, and Father had a drinking problem. They separated in 2016.

¶3	Father continued to have contact with the children until an incident prompted Mother to get the first of two orders of protection for her and the children against Father in February 2019. Mother explained to the court-appointed investigator that while the children were with Father, Father's girlfriend called Mother to report Father had "gotten really bad" and Mother needed to pick up the children from Father's girlfriend's house. Mother said that Father's girlfriend told her Father had locked an outside gate to prevent her from leaving the home, and Father's girlfriend had to lift the children over the gate to Mother. Father told the investigator that February 2019 was the last time he saw his children.

¶4	Father did not contest or request to modify the order of protection, which permitted Parents to communicate only through Facebook Messenger for the sole purpose of discussing the children. Father's last known contact with Mother concerning the children's wellbeing was through Facebook Messenger in January 2020. A month later, Mother obtained a second order of protection for her and the children based on a finding of "reasonable cause to believe that [Father] may commit an act of domestic violence or has committed an act of domestic violence within the past year (or good cause exists to consider a longer period), . . ." Father again did not object to the order of protection or seek to modify it at any time. This order allowed Parents to discuss the children's wellbeing via Facebook Messenger and also allowed Father to send mail to the

---

2022. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge pro tempore in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2022-162.

children. The following month, Father was charged with aggravated harassment of Mother and court-ordered not to contact her, but he was still permitted to communicate with the children by mail.

**¶5** Later that year, the superior court granted Mother's uncontested petition to dissolve the parties' marriage and gave her sole legal decision-making authority and parenting time. Father confirmed he was served the divorce paperwork while incarcerated, but he never attempted to participate in the proceedings. Nor did he ever seek to modify the dissolution decree.

**¶6** The second order of protection expired in February 2021, and Father was incarcerated again in June 2021. After his release in April 2022, he tried to contact the children, but they refused to speak with him. Other than inquiring about the children through Facebook Messenger, Father did not seek to communicate or visit with his children since the last time he saw them in February 2019.

**¶7** Mother filed a petition to terminate Father's parental rights in 2021. Later that year, she filed an amended petition on abandonment and neglect grounds. Before the severance trial, Parents entered a mediation agreement in which Mother withdrew the neglect ground and Parents agreed that the trial exhibits would be admitted without objection. At trial, Parents stipulated to basic facts about the timeline of their relationship and Father's cessation of contact with the children, and only the court-appointed investigator testified. The superior court granted Mother's petition. Father timely appealed, and we have jurisdiction under Article 6, Sections 9 and 15 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-2101(A)(1), -120.21(A)(1), and 8-235(A).

## DISCUSSION

**¶8** In order to grant a petition for termination of parental rights, the superior court must find (1) by clear and convincing evidence that a statutory ground for termination exists and (2) by a preponderance of the evidence that the termination is in the affected child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018); *see also* A.R.S. § 8-533(B) (listing grounds for termination). "The [superior] court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002), so we view the facts in a light most favorable to affirming the termination, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20

(2000), and affirm a termination order unless it is clearly erroneous. *Jesus M.*, 203 Ariz. at 280, ¶ 4.

¶9 Father argues that Mother failed to prove the termination ground of abandonment by clear and convincing evidence and that termination of his parental rights was not in the children's best interests. Mother did not file an answering brief. We may regard this failure to respond as a confession of error but decline to do so here. *See In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 2 (App. 2022) (declining to view failure to file answering brief as confession of error where a child's best interests were involved).

## I.    Substantial evidence supports the superior court's finding of abandonment.

¶10 "'Abandonment' means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child." A.R.S. § 8-531(1). "Reasonable support," "regular contact," and "normal supervision" are questions of fact for the trial court to resolve. *Michael J.*, 196 Ariz. at 250, ¶ 20. And "we do not re-weigh the evidence on review." *Jesus M.*, 203 Ariz. at 282, ¶ 12.

¶11 The superior court found that Father ceased contact with the children after January 12, 2020, did not attend the dissolution hearing later that year to contest Mother's petition for sole custody of the children, and never contested, sought modification of, or objected to the renewal of the orders of protection. The court also found that Father had not "inquired about the children's well-being, education, health, or medical concerns" in the eighteen months before Mother filed the termination petition.

¶12 Father does not dispute the superior court's factual findings but argues that the January 2020 cessation of contact does not support a conclusion of abandonment because it was reasonable for Father to stop trying to contact Mother and the children after being criminally prosecuted for contacting Mother in violation of the orders of protection. He also argues that the court should have considered his incarceration as a reason he could not maintain a normal parental relationship with the children. But incarceration neither defends against an abandonment claim nor alone justifies severance on grounds of abandonment; it is one of the case-specific factors the superior court considers when evaluating a parent's ability to perform his obligations. *Michael J.*, 196 Ariz. at 250, ¶ 21.

**¶13** Father stopped communicating with Mother about the children in January 2020—seventeen months before his last incarceration. He never challenged or sought to modify the orders of protection against him, sought modification of the dissolution decree's directives regarding the children, or attempted to communicate with the children by mail as permitted by the second order of protection. Sufficient evidence supports the superior court's finding that Father abandoned the children.

**II.     Substantial evidence supports the superior court's finding that termination of Father's parental rights is in the best interests of the children.**

**¶14** Once the superior court has found the existence of a statutory ground for termination by clear and convincing evidence, the court can "presume that the interests of the parent and child diverge," *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005), and its "focus shifts to the interests of the child as distinct from those of the parent." *Id.* at 285, ¶ 31. Severance is in the child's best interests if it will benefit the child or its denial will harm the child. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). "[C]ourts should consider a parent's rehabilitation efforts as part of the best-interests analysis" but not "subordinate the interests of the child to those of the parent once a determination of [parental] unfitness has been made." *Alma S.*, 245 Ariz. at 151, ¶ 15.

**¶15** Here, a court-appointed investigator completed a social study pursuant to Section 8-536. Parents stipulated to the investigator's qualifications and the admission of her report as evidence in the termination hearing. Parents also stipulated that the investigator would be the only witness at the termination hearing. The investigator interviewed Parents and the children and observed the children's interactions with Mother and each other.

**¶16** The investigator reported and later testified that terminating Father's parental rights would be in the children's best interests. She believed that Father's "long history of substance abuse" and his history of domestic violence occurring in front of the children affected "their well being in a negative way." She noted that even though there were protective orders in place, Father could have requested supervised visitation with the children but never did. The superior court found that termination would benefit the children by "alleviating any uncertainty" in their living situation and that not terminating would harm the children by "leav[ing] open the possibility of Father popping in and out of their lives and exposing them to his instability." The evidence supports this finding.

**CONCLUSION**

¶17        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA